ENTERED ON

JAN 11 2010

DOCKET

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| IN RE | * | Case No. 10-60282-JEM |
| --- | --- | --- |
|  | * |  |
| EMERSON OVERLOOK, LLC | * | Chapter 11 |
|  | * |  |
| Debtor. | * |  |
|  | * |  |

## INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

THIS MATTER having come before the Court upon the Emergency Motion dated January 4, 2010, by Emerson Overlook, LLC, Debtor and Debtor-in-Possession, for Order Authorizing Debtor to Use Cash Collateral (hereafter referred to as the "**Motion**"). The Motion seeks authority to expend cash collateral in the ordinary course of the Debtor's business to meet its expenses and continued operations.

It appearing that absent the relief requested herein, the Debtor's estate will suffer immediate and irreparable harm; and it further appearing that notice of the Motion is sufficient and complies with the requirements of Bankruptcy Rules 4001(c) and 4001(d); and the Court having considered the Motion and the Budget, and in accordance with Bankruptcy Rules 4001(c)(1) and (2), due and proper notice of the Motion having been given, and a hearing to consider approval of the relief sought having been held and concluded on the date hereof (the "**Interim**

**Hearing**"); and upon all of the pleadings filed with the Court and all of the proceedings held before the Court, and after due deliberation and consideration and for good and sufficient cause shown;

## THE COURT HEREBY FINDS THAT

A.  On January 4, 2010, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

B.  Debtor is continuing to operate its business as a debtor-in-possession. Debtor owns certain properties consisting of commercial and residential real estate. Debtor is both a landlord receiving rents and a developer/owner of residential condominium units offered for sale to the general public.

C.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

D.  Prior to the Petition Date, the Debtor entered into certain Agreements, pursuant to which The Bank of North Georgia and The Landmark Bank (the "Secured Creditors") may assert interests in the Debtor's rents or other cash collateral. The Debtor is in the process of reviewing these documents, but in the interim adequate protection of these creditors' asserted interests is appropriate. The Debtor believes that the Landmark Bank's interest extends only to a freestanding building, and associated rents, owned by the Debtor and leased to a

tenant, operated as a coffee shop, at 456 Roswell St., Marietta, Georgia. The Debtor further believes that the Bank of North Georgia has no interest in this property, but otherwise has an interest in the Debtor's real estate and rents generated by 326 Roswell St., Marietta, Georgia.

E.  The ability of the Debtor to finance its operations through the continued use of cash collateral is vital to the continued operation of the Debtor's business. The Debtor must utilize the Secured Creditors' collateral to pay day to day operating expenses of running its business. Specifically, the Debtor must continue to service its leases with its tenants, must reimburse its management company, deOplossing, Inc. for ongoing expenses associated with maintenance and upkeep of its properties and must be able to maintain a motivated administrative and sales staff to insure continued sales of its condominium properties. In addition, the Debtor must pay administrative expenses, overhead expenses and make necessary capital expenditures.

F.  The relief requested in the Motion is necessary, essential, and appropriate for the continuation of the Debtor's business and the preservation of the estate.

G.  It is in the best interest of Debtor's estate that it be allowed to use cash collateral and to grant to the Secured Creditors the protections contemplated

hereunder.

H. The terms and conditions of the use of cash collateral are fair, reasonable, and the best available under the circumstances, and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

I. The notice of the Hearing at which this Order was entered was provided by the Debtor by facsimile transmission, email, overnight delivery, or telephone call upon: (i) the United States Trustee, (ii) those parties listed as the Debtor's 20 largest unsecured creditors, (iii) counsel to the Secured Creditors or the Secured Creditors themselves.

J. Good and sufficient cause has been shown for the entry of this Order. Among other things, the entry of this Order will enable the Debtor to continue the operation of its business without interruption and avoid disputes with the Secured Creditors with respect to adequate protection, and is therefore in the best interest of the Debtor, creditors, and the estate.

NOW, THEREFORE, on the Motion of the Debtor and the record before the Court with respect to the Motion, and with the consent of the Debtor and the Secured Creditors to the form and entry of this Order, and good cause appearing,

IT IS ON THIS 8th day of January, 2010 ORDERED, ADJUDGED AND DECREED that:

### APPROVAL OF AND AUTHORIZATION AS TO USE OF CASH COLLATERAL

1. The Motion is hereby granted, and the terms and the conditions of the Debtor's use of cash collateral are hereby approved. The Debtor is authorized on an interim basis, to:

(a) use the Secured Creditors' cash collateral for operating expenses up to the amounts set forth in the Budget attached hereto as Exhibit "A";

(b) grant the Secured Creditors Replacement Liens (as defined below) on accounts receivable and rents generated post-petition, to the same extent, validity, and priority as existed pre-petition, and to the extent that the Debtor utilizes cash collateral pledged to the Secured Creditors.

2. This Order shall constitute a valid, binding obligation of the Debtor's estate, enforceable in accordance with its respective terms and provisions. The Debtor is hereby authorized, empowered, and directed to do and perform all acts and to make, execute, and deliver all instruments and documents that may be requisite, necessary or desirable for the performance by the Debtor of the obligations under this Order and the creation and perfection of the Liens described

in and provided for by this Order, having the priority contemplated hereby, with respect to the Liens authorized herein.

3. Subject to the terms and conditions of this Order and the Agreements, the Debtor may use the Secured Creditors' cash collateral as set forth on the Budget, provided such use shall not be in excess of collections actually received in connection with accounts, rents or sales of the Secured Creditors' collateral as existing on the Petition Date and generated thereafter. The Debtor warrants and represents that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of business for the period set forth in the Budget. In no event shall the Debtor use the Secured Creditors' cash collateral to pay any items not contained in the Budget without the consent of the Secured Creditor(s) holding an interest in the funds. Notwithstanding the foregoing, the Debtor may use line item budgeted items on a cumulative basis, and may expend cash collateral within a variance of ten percent of budgeted items. Any other modifications of line amounts may only be made with the consent of the Secured Creditor(s). The Debtor also agrees not to incur any administrative expenses other than as set forth in the Budget without the prior written consent of the Secured Creditor(s) or approval of the Bankruptcy Court after notice and a hearing. However, this limitation shall not apply to fees and

costs of counsel for the Debtor or any other professionals employed by order of the Court and subject to approval of the Court upon appropriate motion, or utility deposits as may be requested by any entities entitled to request deposits pursuant to 11 U.S.C. § 366. The Debtor is authorized to make any deposits necessary to insure continued provision of utilities in an amount up to 300% of the average monthly usage of any given utility on any given property. The Debtor may make such deposit, which shall remain subject to the claims of the Secured Creditors and included in the Replacement Liens, as defined below. The Debtor shall notify the Secured Creditor(s) of any such requests for deposits when such request is made.

4. The Secured Creditors are not required to advance to the Debtor any amounts that may be available for lending under the pre-petition Agreements.

5. In addition to the existing rights and interests of the Secured Creditors in the cash collateral and for the purpose of attempting to provide adequate protection for the interests of the Secured Creditors, the Debtor hereby grants to the Secured Creditors, as security for the amount of cash collateral used by the Debtor, valid, perfected, and enforceable security interests (the "Replacement Liens") pursuant to § 364(c)(2) and (3) of the Bankruptcy Code in and on all of the assets of the Debtor created after the Petition Date, including, without limitation, all of the Debtor's accounts, contract rights, inventory and other such collateral in

which the Secured Creditors had an interest pre-petition, including any proceeds of the foregoing, and to the extent that the Debtor utilizes cash collateral pledged to the Secured Creditor(s).

6. The Replacement Liens herein granted are and shall be in addition to all security interests of Secured Creditor existing prior to the Petition Date and shall be valid, perfected and enforceable as of the date of entry of this Order without any further action by the Debtor or Secured Creditor, and to the same priority, extent and validity that existed pre-petition.

7. Nothing herein shall preclude any of the Secured Creditors from seeking, upon appropriate motion, any attorneys fees and/or interest they may be entitled to pursuant to 11 U.S.C. § 506. Nothing herein shall constitute a preclusive adjudication concerning adequate protection rights of creditors, or the existence, priority or extent of liens, except for the limited purposes of providing interim adequate protection under the terms of this Order.

8. The Debtor shall maintain all necessary insurance in connection with the operation of its business and shall provide the Secured Creditors with proof of such insurance upon request.

9. A final hearing authorizing the Debtor to use cash collateral shall be held on the 2nd day of February, 2010 at 2:00 a.m./p.m. (the "Final" *struck through*) in Courtroom 1404, ~~Atlanta, GA~~ U.S. COURTHOUSE, 75 SPRING STREET, ATLANTA, GEORGIA.

8

(the "Final Hearing"). Notice of the Motion and the Final Hearing shall be served by regular first class mail on or before the 14th day of January, 2010 upon: (i) the United States Trustee, (ii) those parties listed as the Debtor's 20 largest unsecured creditors, (iii) the Secured Creditors and (iv) all lienholders of record against any property of the Debtor. Such notice shall be deemed good and sufficient. Objections to the requested relief and entry of the final order shall be filed with the Court and served upon the Debtor, Debtor's counsel, and counsel to the Secured Creditors by no later than 4:00 p.m. on January 29, 2010.

SO ORDERED, this 8th day of January, 2010.

/s/ James E. Massey
JAMES E. MASSEY
UNITED STATES BANKRUPTCY JUDGE

PREPARED AND PRESENTED BY:
MACEY, WILENSKY, KESSLER & HENNINGS, LLC

By: _____/s/_____
    Todd E. Hennings
Georgia Bar Number 347302
230 Peachtree Street, NW, Suite 2700
Atlanta, GA  30303-1561
(404) 584-1200
thennings@maceywilensky.com

Income:
| | |
|---|---|
| MIJS Lease | 53,924.45 |
| Anderson St. Partners | 25,031.18 |
| Emerson Coffee Shop Lease | 1,237.00 |
| | 80,192.63 |

Expenses:
| | |
|---|---|
| Anderson St. Partners Share | $28,174.88 |
| HOA Expenses | 5,750.00 |
| Marketing/Advertizing | 2,500.00 |
| Fitness Equipment Lease | 876.46 |
| Utilities in unsold condos | 8,400.00 |
| Maintenance MEPS | 500.00 |
| Bank Fees | 100.00 |
| Insurance | 2,300.00 |
| Administrative Expenses | 1,000.00 |
| | $49,601.34 |



# DISTRIBUTION LIST

| | |
|---|---|
| 2000 Concrete Structure, LLC<br>1010 Huntcliff<br>Atlanta, GA  30350-7532 | ACME American<br>319 Atlanta Street, S.E.<br>Marietta, GA  30060 |
| Balance Staffing<br>P. O. Box 60839<br>Charlotte, NC  28260 | Controlled Access<br>1791 Williams Drive<br>Marietta, GA  30066 |
| Cool-Tech<br>P. O. Box 4458<br>Canton, GA  30114 | Curtainwall & Glass Systems<br>P. O. Box 922285<br>Norcross, GA  30010 |
| First Fence of Georgia<br>4131 Jiles Road<br>Kennesaw, GA  30144 | Hart Flooring<br>6659 Peachtree Industrial Blvd., Suite L<br>Norcross, GA  30092 |
| Henry Sign Systems, Inc.<br>2285 Park Central Boulevard<br>Atlanta, GA  30340 | Holt and Holt, Inc.<br>1286 Hawthorne Lane<br>Smyrna, GA  30080 |
| Lemay Electric, Inc.<br>12195 Highway 92<br>Suite 114-214<br>Woodstock, GA  30188 | Poag Mechanical<br>112 Pioneer Industrial Boulevard<br>Jasper, GA  30143 |
| Premier Elevator Co.<br>230 Andrew Drive<br>Stockbridge, GA  30281 | Professional Staffing<br>d/b/a Craftsman on Call<br>P. O. Box 4699<br>Clearwater, FL  33758 |
| Reb Storage Systems<br>P. O. Box 66336<br>Chicago, IL  60666 | Spectra Flooring<br>3648 Oakcliff Road<br>Doraville, GA  30340 |
| Sundance Roofing<br>1330 Shadowood Court<br>Marietta, GA  30066 | Terry's Touch Custom Painting<br>2684 Catawba Drive<br>Kennesaw, GA  30152 |

| | |
|---|---|
| White Hawk, Inc.<br>1475 Canton Road<br>Marietta, GA 30066 | Thomas Dworshak, Esq.<br>Office of the U. S. Trustee<br>Suite 362<br>75 Spring Street, S.W.<br>Atlanta, GA 30303 |
| Greg M. Taube, Esq.<br>Nelson, Mullins, Riley & Scarborough, LLP<br>201 17th Street, N.W., Suite 1700<br>Atlanta, GA 30363 | First Landmark Bank<br>Attn: Ronald H. Francis, Registered Agent<br>48 Atlanta Street<br>Marietta, GA 30006 |
| Todd E. Hennings, Esq.<br>Macey, Wilensky, Kessler & Hennings, LLC<br>230 Peachtree Street, N.W.<br>Suite 2700<br>Atlanta, GA 30303-1561 | |